James A. Patten (ID # 1191)
Craig D. Martinson (ID # 953)
Juliane E. Lore (ID # 9786)
**PATTEN, PETERMAN, BEKKEDAHL & GREEN, P.L.L.C.**
2817 Second Ave. North, Suite 300
Billings, MT 59101
Telephone (406) 252-8500
Facsimile: (406) 294-9500
Email: japatten@ppbglaw.com
cmartinson@ppbglaw.com
jlore@ppbglaw.com
Attorneys for Glacier Stone Supply Inc.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

IN RE:

GLACIER STONE SUPPLY, LLC,   ) Case No. 10-61638
                             )
            Debtor.          )
                             )

**MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 361, AND 363 AND BANKRUPTCY RULES 2002, 4001, AND 9014 FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING DEBTOR TO UTILIZE CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS, AND (3) SCHEDULING INTERIM AND FINAL HEARINGS**

Glacier Stone Supply LLC, the Debtor and Debtor- in-Possession in the above-captioned case (the "Debtor") hereby moves for entry of an interim order (the "Interim Order") and a final order (the "Final Order"), under §§ 105, 361, and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001(b) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules for the United States Bankruptcy Court for the District of Montana (the "Local Rules"), (i) authorizing the Debtor to utilize cash collateral, (ii) granting adequate protection to the Secured Creditors (as defined below), and (iii)

scheduling a final hearing on this motion (the "Motion"). In support of the Motion, the Debtor respectfully represents:

## I. BACKGROUND

### A. The Chapter 11 Filing

1. On July 6, 2010 (the "Petition Date") the Debtor commenced a case ("Chapter 11 Case") by filing a petition for relief under Chapter 11 of the Title 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as debtor and debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. No creditors' committee has been appointed in this Chapter 11 Case by the United States Trustee. No trustee or examiner has been appointed in the Debtor's Chapter 11 case.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief requested herein are §§ 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

### B. Background and Current Business Operations.

5. The Debtor mines, processes, and sells masonry stone. It operates in Flathead County, Montana. It employs 68 people, is a large employer in Flathead County where the current unemployment rate is 11.5%, the third highest unemployment rate for any county in Montana, and has gross monthly payroll of $165,000. The Debtor has been organized since 2003. It quarries stone from leases in Flathead County and processes the stone into masonry

2

stone. The Debtor had gross revenues of $7,300,000, in 2007, $8,500,000 in 2008, and $5,300,000 in 2009.

6. As of the commencement of this case, the Debtor possessed $153,288 of non purchase money liened equipment and machinery, $3,001,257 of stone inventory, and $876,546 of accounts receivable.

7. On February 9, 2007 the Debtor entered into a revolving line of credit Loan Facility with Wells Fargo Bank ("WF") (the "Senior Secured Loan"). WF holds a security interest lien on the Debtor's prepetition assets including inventory and accounts receivable, equipment, goods, general intangibles, as well as holding liens on the Senior Secured Loan's guarantor's David Wilkins real property ("Prepetition Collateral"). Under the terms of the Senior Secured Loan all receivables are paid into a "lockbox" controlled by WF and then released to the Debtor based on formula of inventory value, accounts receivable, and total outstanding loan balance. In general, under the Senior Secured Loan and modifications thereto, WF will advance up to the lesser of $4,000,000 or 80% of the eligible accounts receivable, plus 50% of eligible landscaping inventory capped at $100,000, plus 50% of eligible assembly inventory, plus 25% of the bulk inventory, provided that all inventory is capped at $1,200,000, less other obligations owed to WF.

8. As of the petition date, the Debtor was indebted to WF under the Senior Secured Loan in the amount of $3,092,671. In addition the Debtor owes various equipment lenders under installment notes, capital leases, and operating leases. The equipment lenders do not hold a lien on either inventory or accounts receivable. The other creditors holding junior liens on the inventory and accounts receivable are Montana Economic Development, Living Full Blast LLC,

William Jarvis, and Dan Reiner as well as David Wilkins, Norvell Enterprise and Howard Wilkins ("Junior Lien Holders') (collectively with WF the "Inventory and A/R Lienholders") The Inventory and A/R Lien Holders, their priority, and the amount due are as follows:.

| | |
|---|---|
| WF (1) | $3,092,671 |
| Montana West Economic Development (2) | $ 285,252 |
| Living Full Blast LLC (3) | $ 150,000 |
| William Jarvis (4) | $ 206,666 |
| Dan Reiner (5) | $ 100,000 |
| Norvell Enterprises (6) | $ 100,000 |
| David Wilkins (7) | $ 423,871 |

9. The total claims secured by the Inventory and A/R Lien Holders is $4,358,460.

10. In addition to the above listed secured debt aggregating approximately $4,358,460, as of June 30, 2010 the Debtor estimates that it may owe approximately: (a) $1,515,838 for ordinary course trade debt; (b) an unliquidated amount for contractual unsecured obligations, including, without limitation, payments owed under leases; (c) $2,370,812 for capital leases or installment loans; and (d) $207,157 in priority claims mainly accrued but not due wage claims. These estimates do not include claims which are contingent, unmatured and/or disputed.

11. As of June 30, 2010 the Debtor owned eligible accounts receivable subject to the Inventory and A/R Lien Holders claims in the amount of $876,546. A WF Loan guarantor, David Wilkins, has pledged real estate to further secure the loan; the value of the WF lien on this guarantor's collateral is $806,000. In addition, WF holds a lien on machinery and equipment; the value of the equipment is not otherwise subject to a purchase money lien is $153,288. In total, WF holds collateral with a value of $4,837,091 which secures indebtedness of $3,092,671.

12. The proceeds realized from the sale of inventory or the collection of accounts

4

receivable constitute "cash collateral" within the meaning of § 363 of the Bankruptcy Code. The Debtor may not use cash collateral without consent of the Inventory and A/R Lien Holders or an order of this Court.

13. The Debtor commenced this Chapter 11 case in order to preserve and maximize its business as a going concern, for the benefit of all stakeholders, and arrange through a Chapter 11 Plan, for an orderly reorganization as a going concern. The "lockbox" arrangement with WF results in WF control of the accounts receivable and further results in the Debtor lacking liquidity to fund operations.

14. With the cash collateral requested in this motion, the Debtor seeks to preserve the value of its assets for the benefit of its creditors and the parties in interest in this case.

15. At this time, the Debtor has an immediate need to use cash collateral in order to fund its day to day operations and to maintain itself as a going concern during the pendency of this case.

## II. RELIEF REQUESTED

16. The Debtor intends to finance the operations of its businesses during the Chapter 11 Case through the use of cash collateral. The Debtor intends to use the cash collateral (a) to fund the costs and expenses of the Debtor; (b) to fund its general corporate needs, including working capital needs; and (c) to pay fees and expenses related to this Chapter 11 case, all in accordance with the Budget. A copy of the Budget is appended hereto as Exhibit "1."

17. Additionally, with this Motion, the Debtors request entry of an order scheduling, pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2, not earlier than 15 days from

5

the date of this motion, a Final Hearing for this Court to consider entry of a final order authorizing such additional postpetition financing.

18. The Debtor seeks, through this Motion: (a) the scheduling, pursuant to Bankruptcy Rule 4001, of an interim hearing (the "Interim Hearing") on this Motion for this Court to consider entry of an interim order annexed to the Motion as Exhibit 2 (the "Interim Order") (i) authorizing the Debtor, on an interim basis, to use cash collateral, and (ii) granting the adequate protection hereinafter described; and (b) scheduling a Final Hearing on this Motion, as requested below.

### III. BASIS FOR RELIEF

19. The Debtor faces liquidity constraints. The Debtor has exhausted its options for addressing its liquidity issues. The Inventory and A/R Lien Holders hold a lien on all assets that could otherwise fund operations. Thus, without the use of cash collateral the Debtor does not have sufficient available sources of working capital to operate its businesses during the Chapter 11 Case. The Debtor needs approval for the use of cash collateral to, among other things, satisfy its costs and expenses in connection with the on-going operations and other routine operating expenses such as payroll, contractor costs, or other obligations. Without the proposed use of cash collateral, the Debtor will be forced to discontinue its operations and cease employment of its 68 employees. The use of cash collateral will avoid such a result and provide a basis upon which the Debtor can continue ordinary course operations pending a final hearing on this matter.

20. Moreover, the use of cash collateral will provide the Debtor's employees, contractors, customers and vendors with the needed assurance that the Debtor will be able to continue conducting its businesses in the ordinary course without interruption pending a final

6

hearing on this motion. In the absence of immediate approval of the use of cash collateral, the Debtor will have no choice but to immediately discontinue operations, resulting in immediate and irreparable harm to the Debtor and its estates through the loss of employees and disruption in marketing and delivery of masonry stone. For these reasons, the Debtor has an immediate need for use of cash collateral.

21. The Debtor believes that the proposed adequate protection will be sufficient to protect the Inventory and A/R Lien Holders from any diminution in value of their interest in the Prepetition Collateral. The adequate protection terms are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.

### IV. APPLICABLE AUTHORITY

22. Section 363 of the Bankruptcy Code provide:

> (c) (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless –
>
>> (A) each entity that has an interest in such cash collateral consents; or
>>
>> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.
>
> (e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interests . . . .

23. Bankruptcy Rule 4001(b) governs the procedures for securing authorization to obtain debtor-in-possession financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(b)(2).

24. The Debtor is seeking authority for the use of cash collateral to avoid immediate and irreparable harm to the estate. Without the relief requested, the Debtor will suffer immediate and irreparable harm because the Debtor will not be able to fund payroll, will no longer be able to operate in the ordinary course of business, will not be able to avoid loss of its retail customer base, and will likely be forced to cease operations. Accordingly, pursuant to Bankruptcy Rule 4001, the Court is authorized to grant the relief requested herein.

25. The Debtor expects it will be unable to obtain adequate consent for use of cash collateral.

26. The proposed use of cash collateral is required to preserve and maintain the Debtor's going concern value during this Chapter 11 Case. Therefore, the proposed use of cash collateral is in the best interests of the Debtor's estate and creditors. The availability of operating cash pursuant to this Motion is necessary to provide working capital for the Debtor to continue to operate its business.

27. Accordingly, the Debtor requests that this Court authorize the Debtor to use cash collateral to the extent and pursuant to the terms set forth herein, consistent with the Budget, and in the Interim Order.

28. In exchange for the Debtor's use of cash collateral, the Debtor proposes to provide the Inventory and A/R Lien Holders with adequate protection in accordance with §§ 363(c) and 361 of the Bankruptcy Code. To that end, the Debtor request that the Court approve and authorize the Debtor's proposed adequate protection of the Inventory and A/R Lien Holders' interest in the cash collateral through a post petition lien on post petition accounts receivable and post petition inventory in an amount equal to the amount of cash collateral used.

29. The adequate protection proposed by the Debtor is replacement liens (the "Replacement Liens") on the post petition accounts receivable and the post petition inventory. Additional adequate protection exists from the "equity cushion" existing in the Pre-Petition collateral.

30. The WF collateral has a current value of $4,387,091. This value exceeds the amount owed to WF by $1,744,420. The Junior Lien Holders Secured Claims total $1,265,789. An equity cushion of $478,631 or 38% for the Junior Lien Holders exists.

31. The Debtor submits that the proposed adequate protection package is more than sufficient to adequately protect the Inventory and A/R Lien Holders against the risk of any diminution in value of each of their interests in their respective Prepetition Collateral during the Chapter 11 case.

32. Section 361 of the Bankruptcy Code, which identifies a non-exhaustive list of forms of adequate protection, states:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> > (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section

9

> 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title *results in a decrease in the value of such entity's interest in such property*;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant *results in a decrease in the value of such entity's interest in such property*; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent *of such entity's interest in such property*.

11 U.S.C. § 361 (emphasis added). Although adequate protection can be provided in a number of ways, a secured creditor is granted adequate protection through Replacement Liens and through the existing equity cushion.

33. Section 361 of the Bankruptcy Code identifies a non-exhaustive list of different forms of protection that constitute adequate protection. Subsection 361(2) expressly recognizes replacement liens as a form of adequate protection. As such, the Replacement Liens contemplated by this Motion in combination with the equity cushion will afford the Inventory and A/R Lien Holders adequate protection. The Debtor submits that granting the Replacement Liens provides adequate protection of their interests within the meaning of §§ 361 and 363 of the Bankruptcy Code.

34. In light of the foregoing, forms of protection proposed by the Debtor more than adequately protect the interests of the Inventory and A/R Lien Holders and, therefore, the relief sought herein should be granted. Moreover, the Debtor has demonstrated herein and will demonstrate through testimony, that absent such relief, the Debtor will suffer immediate and irreparable harm.

## V. NOTICE AND HEARING

35. Notice of this Motion has been given by facsimile and/or email to the following parties, or in lieu thereof, to their counsel: (i) the United States Trustee; (ii) WF and their counsel; and (iii) Flathead County; (iv) the Inventory and A/R Lien Holders and their counsel (if known); and (v) those persons filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in these cases. The Debtor submits that under the circumstances, no further notice of the hearing on the interim financing set forth in the Interim Order is necessary and request that any further notice be dispensed with and waived.

36. The Debtor respectfully request that the Court (a) schedule the Final Hearing not earlier than 15 days of the date of this Motion, and (b) authorize the Debtor to serve any interim order which fixes the time and date for filing objections to this Motion, and the Final Order, by email, facsimile or first class mail upon the following parties, or in lieu thereof, to their counsel: (i) the United States Trustee; (ii) WF and their counsel; (iii) Flathead County; (iv) the Inventory and A/R Lien Holders and their counsel (if known); (v) those persons filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in these cases; and (vi) all other parties ordered by the Court. The Debtors request that the Court deem such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

## VI. NO PRIOR REQUEST

37. No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter the proposed Interim Order, substantially in the form annexed hereto, granting the relief requested in the

11

Motion and such other and further relief as may be just and proper and a Final Order authorizing the Debtor to use cash collateral.

DATED this 7th day of July, 2010.

/s/ *James A. Patten*
James A. Patten
**PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC**
2817 2nd Avenue North Suite 300
Billings, MT 59101
Attorneys for Glacier Stone Supply LLC