## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**GLACIER STONE SUPPLY LLC**,

Debtor.

Case No.  **10-61638-11**

# M E M O R A N D U M

At Butte in said District this 25th day of July, 2011.

In this Chapter 11 case James H. Cossitt ("Cossitt") of James H. Cossitt, PC, Kalispell, Montana, counsel for the Unsecured Creditors Committee ("UCC") filed on June 15, 2011, Motions "1) to compel payment of administrative expenses; 2) to compel an accounting of payment of administrative expenses; 3) to suspend further implementation of plan except in strict accordance with the confirmed plan."  (Docket No. 310) (hereinafter "Motions").  The Debtor objected.  A hearing on Cossitt's Motions was held after due notice on July 7, 2011.  Cossitt appeared at the hearing.  Debtor was represented by attorney James A. Patten of Billings.  Cossitt did not testify or offer exhibits, and he objected to any testimony offered by the Debtor on the grounds it would involve offers to compromise prohibited under FED. R. EVID. 408.  The Court overruled Cossitt's objection, and Debtor's financial manager Jeff Hider ("Hider") testified. Debtor's Exhibit ("Ex.") 6 was admitted without objection.  At the conclusion of the parties' cases-in-chief the Court took Cossitt's Motions under advisement.  After review of the confirmed Plan, the record and applicable law, this matter is ready for decision.  For the reasons set forth below Cossitt's motion to compel will be granted in part and the Motions otherwise denied.  The

1

Debtor shall be ordered to pay Cossitt's administrative claim in full on or before October 31, 2011.

This Court has jurisdiction of this Chapter 11 bankruptcy under 28 U.S.C. § 1334(a). Cossitt's Motions are a core proceeding under 28 U.S.C. § 157(b)(2).  At issue are whether the Debtor's confirmed Chapter 11 Plan requires payment of Cossitt's administrative claim for fees and costs in full, before any other claims can be paid; and whether Cossitt agreed to a different treatment of his administrative claim under 11 U.S.C. § 1129(a)(9).

## BACKGROUND FACTS & PROCEDURAL HISTORY

This case commenced on July 7, 2011, when the Debtor filed a Chapter 11 petition. Cossitt first appeared representing City Service Valcon, LLC, a member of the Committee of Unsecured Creditors.  On October 14, 2010, Cossitt filed an application to employ himself and his firm as general counsel for the UCC at an hourly rate of $300 plus expenses, which was approved.

Debtor filed a Chapter 11 Plan and disclosure statement on November 22, 2010.  Cossitt and other creditors filed objections to the disclosure statement.  At a hearing Patten conceded the objections, and filed an amended Disclosure Statement and amended Plan (Dkt. 209) on January 27, 2011.  The amended Disclosure Statement was approved and confirmation was set for hearing on March 10, 2011.

Cossitt filed a first interim application for fees and costs, which was approved without objection.  Cossitt was awarded interim fees in the amount of $12,006.00 and costs of $1,601.88.

Patten and Cossitt, on behalf of their clients, executed a Stipulation (Dkt. 256) for treatment of the UCC's Class XIII claims.  The Stipulation provided that the UCC shall withdraw

2

its objection to confirmation so long as the Class XIII claims are treated as provided in the Stipulation. The Court approved that Stipulation, and Cossitt filed a withdrawal of the UCC's objection to confirmation (Dkt. 263), wherein Cossitt stated that the UCC requests that the Plan be confirmed.

At the confirmation hearing on March 11, 2011, the Court directed Patten to file a final supplemented version of the Plan incorporating the stipulations with creditors. Patten filed the Second Amended Plan (Dkt. 274) on March 23, 2011. The Court granted the parties additional time to file responses, and stated that the Court would confirm the Second Amended Plan if no objections were filed. An objection was filed by the Internal Revenue Service ("IRS"), so the Court set another confirmation hearing for April 7, 2011. Debtor filed a Third Amended Plan on April 6, 2011 (Dkt. 286), and the Debtor and IRS settled its objection.

At the hearing on April 7, 2011, no appearance was made at the hearing. Cossitt did not appear at the hearing, and did not file a timely objection to confirmation prior to the hearing, but Cossitt's associate Jeffrey K. Greenwell appeared at the hearing representing the UCC and voiced concern about when Cossitt's administrative fees would be paid. The Court, based upon the UCC's stipulation with the Debtor, which was approved, and the UCC's request that the Plan be confirmed, confirmed the Third Amended Plan at the hearing. No notice of appeal of the Order confirming the Plan has been filed and confirmation therefore is final.

The confirmed Plan (Dkt. 286) contemplates treatment of claims from the sale of decorative natural stone which the Debtor mines and manufactures. Cossitt's fees as UCC counsel are allowed as an administrative expense and are provided for at paragraph 3.01 on page 4:

> _Administrative Expenses_.  Any reasonable administrative expense of the _Debtor_'s Chapter 11 case allowed pursuant to § 503(b) of the Code and given priority by virtue of § 507(a) of the Bankruptcy Code **_shall be paid first after confirmation_** except any separately classified administrative expense such as the Class XIV administrative expenses; administrative expenses may include fees and costs of attorneys, accountants, economic and business consultants, Realtors, appraisers, post petition income taxes, the fees due to the U.S. Trustee, and any administrative expense allowed by application of 11 U.S.C. § 503.  No such administrative expense shall be paid until the amount thereof has been approved by an order of the _Court_, except U.S. Trustee's fees, and post petition income taxes.

(Emphasis added).

The word "paid" and the phrase "shall be paid first after confirmation" from the above quoted paragraph 3.01, are not defined in the plan definitions in Article I.  Article VI on page 12 sets forth the provisions for payment of claims.  Paragraph 6.01 provides: "_Administrative_:  The allowed administrative claim will be paid after the _Confirmation Date_ and upon approval by the _Court_."  (Emphasis in original).  The term "Confirmation Date" is defined at paragraph 1.03 which states that it "[s]hall mean the date upon which an order of confirmation is ordered by the _Court_."  Thus, the Confirmation Date is April 8, 2011.

Cossitt filed his final application for fees and costs on April 22, 2011.  No objection was filed, and the Court entered an Order on May 10, 2011 (Dkt. 296) awarding Cossitt additional fees and costs and awarded final approval of his interim fees and costs, in an amount totaling $20,302.79.

Hider testified that the Debtor began making plan payments, that Debtor tendered checks to Cossitt who accepted them, and that the Debtor has begun making payments to other creditors provided for in the confirmed Plan.  Over Cossitt's repeated objections that the testimony was prohibited by Rule 408, the Court allowed Hider to testify about the substance of settlement

4

discussions involving Cossitt, Patten and Hider.

Hider testified that Cossitt sent Patten an e-mail indicating that Cossitt would accept payments on his administrative claim in the amount of $3,500 per month at an interest rate of 1 percent (1%) per month.  Hider further testified that the Debtor communicated acceptance of Cossitt's offer and commenced making payments, relying on Cossitt's agreement.  Ex. 6[1] shows two payments to Cossitt on 5/11/2011 and 6/8/2011 in the amount of $3,500 each.

Under cross examination by Cossitt, Hider testified that Cossitt's e-mail requested a written agreement and order, but Hider was not aware of  a signed agreement memorializing the Debtor's agreement with Cossitt.  On redirect examination Hider testified that a written stipulation regarding the agreement was signed on behalf of the Debtor and was tendered to Cossitt.  No such written agreement was offered into evidence.

Hider testified that Cossitt's administrative claim will be paid in full by October 2011. He testified that Cossitt's claim will be paid in full first, before any other claim is paid in full under the confirmed Plan.  Cossitt asked Hider if paragraph the phrase "shall be paid first after confirmation" in paragraph 3.01 of the Plan gives the Debtor discretion when to pay Cossitt's administrative claim, Hider answered that the phrase means that Cossitt will be paid first, before any other claims are paid in full.  Hider's testimony is uncontroverted by any other testimony or exhibit in the record.

On June 15, 2011, Cossitt filed his Motions "1) to compel payment of administrative expenses; 2) to compel an accounting of payment of administrative expenses; 3) to suspend

---

[1]Ex. 6 also listed unauthorized payments by Debtor to accountant Junkermier, Clark, Campanella totaling $3,825.00.  The Court admonished the Debtor and Patten about these unauthorized fees at the hearing.

further implementation of plan except in strict accordance with the confirmed plan." Cossitt's

Motions acknowledge on page 2 that he has received payments of his fees in the amount of

$7,000 in May and June 2001, and that there remains a balance due of $13,302.59. Cossitt

argues that the confirmed Plan and 11 U.S.C. § 1129(a)(9)(A) require that his administrative

claim be paid as of the effective date of the Plan, and that the Debtor has failed to pay. Footnote

1 of Cossitt's motions states: "Cossitt had discussions and email with counsel for the debtor, Mr.

Patten, relating to payments over time, but nothing was agreed upon." Cossitt offered no

evidence in support of those contentions.

Cossitt's Motions ask that payments to other claims under the Plan should be terminated

or suspended until he is paid in full or the Plan is modified. He asks for an accounting of all

administrative claims paid, and for disgorgement of any claims which have been fully paid, and

asks for entry of judgment, issuance of a writ of execution against the Debtor, and for the

automatic stay to be lifted to authorize Cossitt to enforce the judgment.

Debtor objects to Cossitt's Motions. Debtor argues that the confirmed Plan provides that

Cossitt's administrative claim shall be paid in full first, before any other creditor is paid in full.

Debtor contends that Cossitt negotiated and agreed to accept monthly payments of $3,500 per

month, with interest, but that Cossitt filed his Motions after his additional demands for security

were not accepted. Debtor argues that Cossitt agreed to different treatment of his claim, and that

the Debtor relied on Cossitt's agreement in making the $7,000 in payments which Cossitt

accepted. Debtor agrees to provide an accounting of the administrative expense, as shown in Ex.

6, but objects to any injunctive relief.

6

## DISCUSSION

Section 1141(a) of the Bankruptcy Code provides that the provisions of a confirmed plan bind the debtor, any entity issuing securities or acquiring property under the plan, and any creditor of, or equity security holder or general partner in, the debtor. 11 U.S.C. § 1141(a). It is well settled that a bankruptcy court's confirmation order is a binding, final order, accorded full res judicata effect. *See In re Wolfberg*, 255 B.R. 879, 882 (9th Cir.B.A.P.2000), *aff'd*, 27 Fed.Appx. 891 (9ᵗʰ Cir. 2002); *In re Kelley*, 199 B.R. 698, 702 (9th Cir. BAP 1996). The res judicata effect bars not only claims that were asserted, but also claims that "could or should have been raised during the pendency of the case." *Wolfberg*, 255 B.R. at 882; *In re Heritage Hotel Partnership I*, 160 B.R. 374, 376-77 (9th Cir. BAP 1993), *aff'd*, 59 F.3d 175, 1995 WL 369528 (9th Cir.1995) (table). The principle that the confirmed plan is a binding final order accorded full res judicata effect is broadly applied. *See Wolfberg*, 255 B.R. at 882.

The Debtor and Cossitt negotiated a written stipulation for the treatment of the UCC's claim. The stipulation was submitted to the Court and was approved. That stipulation could have but does not include any provision regarding the payment of Cossitt's fees. In withdrawing the UCC's objection to confirmation Cossitt stated that the UCC requests that the Plan be confirmed. Cossitt did not file a timely[2] objection to confirmation based upon the treatment of his unpaid administrative claim, and Cossitt did not appear at the confirmation hearing. Instead, Cossitt sent his associate to the hearing, who did not offer any testimony or evidence in support of Cossitt's belated oral opposition to confirmation on the basis of the Plan's treatment of his

---

[2]The Court granted the parties extensions of time to file objections.

7

administrative claim[3].

Cossitt argues that the confirmed Plan is a binding contract, and the Court agrees. The Plan was confirmed and binds the parties. The problem is the meaning of the phrase that the administrative claims "shall be paid first after confirmation." "Paid" and "shall be paid first after confirmation" are not defined in the Plan. Cossitt contends that the Debtor is in violation of the confirmed Plan because it requires that his administrative claim be paid in full first. However, the Plan does not say "paid in full first." The common definition of the word "paid" in Webster's Third New International Dictionary of the English Language Unabridged, at p. 1620 (1961) includes receiving pay either in an advanced lump sum, as Cossitt argues, or "3. That has been *or will be paid for*." (Emphasis added). Thus the common usage of "paid" lends support to both sides.

As the moving party, Cossitt has the burden of proof to show that the relief requested in his Motions should be granted. Cossitt offered no evidence at the hearing in support of his contentions, and therefore the Court is left with the Plan language. The Plan does not state at paragraph 3.01 that administrative claims "shall be paid in full first after confirmation," which would support Cossitt's interpretation of the Plan, but rather states "shall be paid first after confirmation" which could go either way. Hider's testimony establishes that Cossitt will be the first creditor whose claim is paid in full first after confirmation. No evidence in the record exists to the contrary. Therefore Cossitt failed to tip the scales in his favor and show by a preponderance of the evidence that the relief requested in his Motions should be granted in full.

[3]Cossitt is an experienced practitioner in this Court. He knows or should know that an objection must be filed in writing by the deadline fixed by the Court prior to the hearing.

8

The Court raised the issue at the hearing of how long a debtor could stretch out payments to an administrative claimant based on such language.  Patten responded by stating that Cossitt will be paid in far less than the 3 years in which other claims will be paid.  That argument is supported by Hider's testimony that the Debtor will pay Cossitt in full on his claim, with interest, by the end of October 2011, before any other creditor is paid in full.  Accordingly, it is not necessary for the Court, in deciding Cossitt's Motions, to determine an outer limit in this case for the phrase "shall be paid first after confirmation" to apply.  The end of October is little more than three months off.

Debtor further objects to Cossitt's Motions on the grounds that he agreed to different treatment of his claim after confirmation.  Cossitt disagreed, and objected to admission of any evidence concerning his negotiations with Patten about his payment, arguing that such evidence is prohibited under Rule 408.

Section 1129(a)(9)(A) requires:

> Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that – (A) with respect to a claim of a kind specified in section 507(a)(2) or 507 (a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim[.]

Cossitt cites a leading commentator, 7 COLLIER ON BANKRUPTCY, ¶ 1129.03[9][a] (16th ed. 2010), in arguing that:  "With respect to these types of priority claims, paragraph [§ 1129(a)] 9 thus constitutes the only essential confirmation requirement . . . . Accordingly, such payment must be in cash on the effective date."  Cossitt left out the bookends to the above quote.  Immediately prior to the above-quote is the clause "unless the holder of a particular claim agrees to different treatment."  Immediately following the quote is:  "The only exception will be if 'the

9

holder of a particular claim has agreed to a different treatment of such claim.' This may be the case with professionals or other entities connected with the case." COLLIER, ¶ 1129.03[9][a]. COLLIER restates the exception of § 1129(a)(9) that a creditor can agree to different treatment.

The Debtor argues that Cossitt did agree to different treatment. Cossitt objected that no evidence should be allowed under Rule 408. Rule 408 of the Federal Rule of Evidence provides:

Rule 408. Compromise and Offers to Compromise.

(a) Prohibited uses.– Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
    (1) furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and
    (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

(b) Permitted uses.– This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay, and proving an effort to obstruct a criminal investigation.

Cossitt objected to any testimony by Hider regarding Cossitt's discussions with the Debtor and/or Patten about resolving payment of his fees on the grounds that such evidence was barred from admission under Rule 408. Cossitt cited Hon. Barry Russell's "Bankruptcy Evidence Manual" as authority for excluding evidence. Discussing Rule 408, Judge Russell wrote:

Rule 408 was amended by Congress to add the third sentence, "The rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations."

10

\* \* \* \*

Evidence of compromise may be relevant for other purposes.  In response, the final sentence of rule 408 provides, "This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay or proving an effort to obstruct a criminal investigation or prosecution."  As in other instances where evidence is admissible for one purpose but not another, Rule 403 requires an evaluation of the probative value and need for such evidence versus the danger of unfair prejudice and misleading a jury.  In reaching this determination, consideration must be given to the probable effectiveness of a limiting instruction.  Rule 105.

Evidence of conduct or statements made in connection with compromise negotiations are admissible as inconsistent statements for purposes of impeachment.  Rule 408 states that evidence of conduct or statements is "likewise not admissible," referring to admissibility of such evidence to prove liability or invalidity of the claim, and furthermore states that the exclusion of evidence is not required when offered for a purpose other than to prove liability or invalidity of claims.

A determination of whether a statement falls within the protection of Rule 408 is exclusively for the court pursuant to Rule 104(a).

Hon. Barry Russell, BANKRUPTCY EVIDENCE MANUAL, § 408:1 (2010-2011 ed.)

The instant contested matter does not involve a criminal investigation or prosecution, and does not involve a jury so there is no danger of unfair prejudice or misleading a jury.  More important, Rule 408 only prohibits admission of evidence "to prove liability for or invalidity of the claim or amount."  The Debtor does not contest Cossitt's administrative claim.  The Debtor did not object to either of Cossitt's fee applications.  The validity or amount of Cossitt's fees is not at issue.  The only issue is whether Cossitt must be paid immediately under the terms of the confirmed Plan.

The Court considers Cossitt's opinion of the scope of Rule 408 to be too expansive.  The Rule does not prohibit admission of Hider's testimony, because it was not offered to prove

11

invalidity of Cossitt's claim or its amount, and the Rule did not require exclusion because the

Debtor offered the evidence for another purpose, i.e., negativing a contention of undue delay in

paying Cossitt's administrative claim over the course of several months by agreement.

 The Debtor offered Hider's testimony and the emails only to show that Cossitt agreed to

accept payments.  The last sentence of Rule 408 provides that it "does not require exclusion

when the evidence is offered for another purpose, such as . . . negativing a contention of undue

delay ...."  The Court overruled Cossitt's objection and allowed Hider to testify that Cossitt

agreed to accept payments over a period of several months.  Cossitt did not testify[4], so Hider's

testimony is uncontroverted.  The statements in Cossitt's motion and brief, and his unsworn

statements at the hearing, are attorney argument not admissible in evidence and therefore not

relevant.  *Hurley v. Student Loan Acquisition Auth. of Ariz.*, *et al.*, (*In re Hurley*), 258 B.R. 15,

23 (Bankr. D. Mont. 2001) (An attorney's argument is not evidence); *United States v.

Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000); *Exeter Bancorporation v. Kemper

Securities Group, Inc.*, 58 F.3d 1306, 1312 n.5 (8th Cir. 1995) (Statements of counsel are not

evidence and do not create issues of fact), citing *United States v. Fetlow*, 21 F.3d 243, 248 (8th

Cir. 1994), *cert. denied*, 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994).

 In sum, based on Hider's uncontroverted testimony, the Court finds that Cossitt agreed to

a different treatment of his administrative claim, to be paid by the end of October 2011, and

therefore the agreed different treatment is in compliance with § 1129(a)(9)(A).  Cossitt argued at

the hearing that the Plan cannot be modified by an oral agreement.  Hider's testimony established

---

 [4]In other cases in this Court in which he is involved as attorney, Cossitt has appeared at
hearings with an associate of his law firm, and testified under oath.  In the instant contested
matter Cossitt elected not to testify.

that the Debtor sent Cossitt a signed written stipulation, but that Cossitt failed to sign and return it. Cossitt is the cause for the lack of a written agreement. This Court will fill that void with a separate written Order directing that the Debtor shall pay Cossitt's administrative claim in full, with interest pursuant to their agreement, by the end of October 2011.

**IT IS ORDERED** the Debtor's objection is sustained; a separate Order shall be entered granting in part Cossitt's Motion to compel payment of administrative expenses, filed June 15, 2011, to the following extent only: The Debtor shall pay James H. Cossitt's administrative claim in full, with interest pursuant to their agreement, by the end of October 2011; and otherwise Cossitt's Motions (Docket No. 310) will be denied.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

13